IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH R. TOSCANO, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 14-763 |
| | : | |
| v. | : | |
| | : | |
| NATIONAL AUTOMOBILE DEALERS ASSOCIATION d/b/a NATIONAL AUTOMOBILE DEALERS INSURANCE TRUST, and EVERCORE TRUST COMPANY (as trustee for NATIONAL AUTOMOBILE DEALERS INSURANCE TRUST), | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                          August 24, 2015

The plaintiff has filed an amended complaint in the above action asserting causes of action for breach of contract and breach of fiduciary duty against the two defendants. As discussed in the court's memorandum opinion granting the motion to dismiss the original complaint, this matter concerns alleged "key man" life insurance policies between the plaintiff and his co-owner of an automobile dealership in which they named each other as beneficiaries under their respective policies. Unbeknownst to the plaintiff, before the co-owner died, he removed the plaintiff as the beneficiary of his life insurance policy, and the plaintiff was unable to collect the proceeds after the co-owner's death. The defendants now move to have the court dismiss the amended complaint because, once again, (1) the plaintiff has failed to state a claim for breach of contract, (2) the gist of the action or the economic loss doctrine bars the plaintiff's breach of fiduciary duty claim, and (3) the plaintiff cannot prove that the defendants caused his damages. The court finds that the plaintiff has failed to state a claim for breach of contract and

the gist of the action doctrine bars his breach of fiduciary duty claim.  Accordingly, the court will dismiss the case with prejudice.

## I.      ALLEGATIONS AND PROCEDURAL HISTORY

The court previously discussed the allegations in the original complaint and the procedural history in this case in a memorandum opinion filed on March 24, 2015.  *See* Mem. Op. at 1-3, Doc. No. 13.  In that memorandum opinion and accompanying order, the court granted the defendants' motion to dismiss the original complaint and granted the plaintiff leave to file an amended complaint.  *Id.*; Order at 1-2, Doc. No. 14.  The plaintiff filed an amended complaint on June 2, 2015.  Doc. No. 24.  The defendants filed a motion to dismiss on June 23, 2015.  *See* Doc. No. 25.  The plaintiff filed a response in opposition to the motion to dismiss on July 7, 2015.  *See* Doc. No. 26.  The defendants filed a reply on July 14, 2015.  *See* Doc. No. 27.  The motion to dismiss is ripe for disposition. The following is a summary of the allegations in the amended complaint.

William Keyte ("Keyte") and Thomas F. Murphy ("Decedent") previously owned an automobile dealership known as Northeast Lincoln Mercury, Inc. ("Northeast Lincoln").  Am. Compl. at ¶ 7.  In approximately 1986 or 1987, Keyte and Decedent purchased "key man" life insurance policies for the benefit of Northeast Lincoln from The Prudential Insurance Company of America ("Prudential").  *Id.*  Keyte and Decedent purchased the policies through the National Automobile Dealers Insurance Trust ("NADIT") because Northeast Lincoln, Keyte, and Decedent were members of the National Automobile Dealers Association ("NADA").  *Id.*

After Keyte died in 1998, Prudential paid the proceeds of the life insurance policy to Decedent.  *Id.* at ¶ 8.  Also, shortly after Keyte's death, the plaintiff, Kenneth R. Toscano, purchased Keyte's share of Northeast Lincoln.  *Id.*  Once the plaintiff became a co-owner of

Northeast Lincoln, he and Decedent placed each other as cross-beneficiaries under "key man" life insurance policies. *Id.* at ¶ 9.

Regarding Decedent's life insurance policy with Prudential (the "Policy"), on or about October 12, 1998, Decedent executed a "Change of Beneficiary and/or Name" form naming Northeast Lincoln as the beneficiary of the Policy and he submitted the form to NADIT. *Id.* at ¶ 11. NADIT recorded the form on October 16, 1998, and sent copies to the plaintiff on October 19, 1998. *Id.* at ¶ 11 & Ex. A. NADIT also forwarded the change of beneficiary form to Prudential. *Id.* at ¶ 12.

After receiving the form, Prudential notified Northeast Lincoln and the plaintiff that Decedent needed to change the beneficiary from Northeast Lincoln to a person. *Id.* On or about November 30, 1998, NADIT forwarded a change of beneficiary form for Decedent to execute. *Id.* at ¶ 13. Decedent executed the form on December 3, 1998, naming the plaintiff as the beneficiary. *Id.* at ¶ 13 & Ex. B. Prudential eventually received the form, and the plaintiff received confirmation of the beneficiary change. *Id.* at ¶ 13.

Since 1998, the plaintiff or Northeast Lincoln paid all premiums under the Policy, and NADIT submitted the bills to the plaintiff.[1] *Id.* at ¶ 14. The plaintiff never received notice that the beneficiary of the Policy was anyone other than him. *Id.* at ¶ 17.

The plaintiff, due to his payment of the Policy premiums and his membership in NADIT, was a party to the National Automobile Dealers Insurance Trust Participation Agreement (the "Participation Agreement") entered into among the NADA, Evercore Trust Company ("Evercore"), NADIT, and the plaintiff. *Id.* at ¶ 18 & Ex. D. Additionally, the plaintiff, along with Evercore and NADA, was a party to the National Automobile Dealers Insurance Trust

---

[1] Based on the payment of premiums, the plaintiff alleges that he "and/or" Northeast Lincoln was the "legal and equitable owner" of the Policy, and only he, Northeast Lincoln, "and/or" Decedent could change the beneficiary of the Policy. Am. Compl. at ¶¶ 15, 16.

3

Agreement and Declaration of Trust (the "Trust Agreement"), first executed on October 1, 1956 and amended and restated on July 31, 2010.  *Id.* at ¶ 24 & Ex. E.  Pursuant to the Trust Agreement, Evercore was responsible for employing agents to administer the NADIT and for the establishment and maintenance of group policies, including the plaintiff's policy, and it held those policies for the benefit of the NADIT.  *Id.* at ¶¶ 27, 28 & Ex. E.

Decedent died on April 19, 2011.  *Id.* at ¶ 17.  Thereafter, the plaintiff attempted to process a claim under the Policy through NADIT, the defendant, Evercore (as trustee for NADIT), Gilsbar, Inc. ("Gilsbar") (the third-party administrator for NADIT), and Prudential.  *Id.* at ¶¶ 29, 30.  In particular, he submitted his claim with Gilsbar and Evercore.  *Id.* at ¶ 30.  Prudential refused to pay the plaintiff any proceeds under the Policy because prior to his death, Decedent changed the beneficiary of the Policy from the plaintiff to Decedent's ex-wife "Silva" and his adult daughter, "Ms. Murphy."  *Id.* at ¶¶ 31, 32.

To attempt to recover the unpaid life insurance proceeds, the plaintiff and Northeast Lincoln commenced an action against Prudential, NADIT, Evercore, Gilsbar, Silva, Ms. Murphy, and Decedent's estate, in the Court of Common Pleas of Philadelphia County.  *See id.* at ¶¶ 58, 59; Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at Exs. A, B, Doc. No. 25.[2]  In this action, the plaintiff "was forced to enter into a settlement agreement with Silva and [Ms.] Murphy for only a fraction of the policy proceeds."  Am. Compl. at ¶ 59.

---

[2] "In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, [*Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002)], and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).  Here, the plaintiff has specifically referenced his underlying lawsuit against the beneficiaries in the complaint.  Am. Compl. at ¶¶ 58, 59.  The defendants have attached documents related to that action to their memorandum of law in support of the motion to dismiss.  Def.'s Mem. at Exs. A, B.  The plaintiff has not objected to the court's consideration of these documents and, even if he did, they are matters of public record.

Based upon, *inter alia*, the above-mentioned allegations, the plaintiff asserts causes of action for breach of contract and breach of fiduciary duty. With respect to his breach of contract claim, the plaintiff alleges that NADIT, pursuant to the Participation Agreement, held the Policy for the plaintiff and "served as a conduit for payment of insurance premiums thereon." *Id.* at ¶ 36. In addition, pursuant to the Trust Agreement the defendants "were to facilitate the establishment and continuation of group insurance programs," including the Policy. *Id.* at ¶ 39. He asserts that under the Trust Agreement, Evercore, as trustee, "was responsible for employing suitable agents and counsel to administer the NADIT, and was responsible for the establishment and maintenance of" the group policies, including the Policy. *Id.* at ¶ 41. The plaintiff argues that "the essential terms of the Participation Agreement and the Trust Agreement . . . required Defendants to notify [him] of a change of beneficiary of the [Policy]," and that the defendants breached these agreements by failing to notify the plaintiff that there had been a request to change the named beneficiary, and further by processing the beneficiary change  *Id.* at ¶¶ 44, 51-52. The plaintiff also alleges that if the defendants had notified him of the change, he could have taken steps to prevent it such as by filing an action for injunctive relief to force Decedent to reinstate him as the beneficiary. *Id.* at ¶ 56. Instead, because the defendants breached their duties, the plaintiff had to sue to obtain "his rightful claim to the policy proceeds," and he eventually entered into a settlement agreement with Silva and Murphy "for only a fraction of the [P]olicy proceeds." *Id.* at ¶¶ 57-59.

For his breach of fiduciary duty claim, the plaintiff claims that Evercore and NADIT had the duty to protect his interest because he is a member of NADA. *Id.* at ¶ 36. The defendants breached this duty by changing the name of the beneficiary without notifying him as the owner of the Policy. *Id.* at ¶ 37.

## II.     DISCUSSION

In the motion to dismiss, the defendants argue that the court should dismiss the amended complaint with prejudice under Rule 12(b)(6) because (1) the plaintiff has not properly pleaded a cause of action for breach of contract, (2) the gist of the action doctrine or the economic loss doctrine bar his claims for breach of fiduciary duty, and (3) the plaintiff cannot prove that the defendants caused his alleged damages.  *See* Defs.' Mem. at 5-13.  The court addresses each of the arguments in turn.

### A.     <u>Standard of Review – Rule 12(b)(6) Motions</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).  As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted).  In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quotation omitted).  Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

In implementing the overarching plausibility standard, the Court is required to conduct a three-part inquiry.  First, the Court must "outline the elements a plaintiff must plead to state a claim for relief."  *Bistrian*, 696 F.3d at 365 (citations omitted).  Second, the Court must identify allegations that are not "entitled to the assumption of truth" because they "are no more than conclusions."  *Id.*  (citations omitted).  Thus, legal conclusions, whether in pure form or "couched as factual allegation[s]," and conclusory factual allegations are not entitled to be assumed true.  *See Iqbal*, 556 U.S. at 678, 681 (quoting *Twombly*, 550 U.S. at 555); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012).  Finally, the Court must "look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'"  *Bistrian*, 696 F.3d at 365 (quotations omitted).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).

The Court generally limits this three-part inquiry to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  However, the Court may also properly consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Id.* (citations omitted).

### B.     Analysis

#### 1.     Motion to Dismiss Count I – Breach of Contract

The defendants argue that the court should dismiss the plaintiff's cause of action for breach of contract because he has, again, failed to plead any of the required elements for a breach of contract claim. Defs.' Mem. at 5. More specifically, the defendants point out that (1) Decedent, and not the plaintiff, owned the Policy, (2) the plaintiff is merely a beneficiary under the Policy and had no "vested right or interest in the proceeds of the policy during the lifetime of the insured," (3) the plaintiff did not attach a copy of the Policy to the amended complaint or otherwise explain its essential terms, (4) the plaintiff failed to allege that the terms of the Policy prevented Decedent from changing his beneficiary or otherwise required that the plaintiff receive notice if Decedent changed the named beneficiary, and (5) the plaintiff's new reliance on the Participation Agreement and the Trust Agreement do not save his claim because they do not impose any notification requirements on the defendants. *Id.* at 7-9 (quoting *Knoche v. Mutual Life Ins. Co. of N.Y.*, 176 A. 230, 231 (Pa. 1934)). Additionally, the defendants argue that this court has already rejected the plaintiff's argument that he is the legal or equitable owner of the Policy by virtue of his or Northeast Lincoln's payment of premiums. *Id.* at 7. Finally, the defendants contend that the plaintiff has not shown any causal connection between the failure to notify him about the change in beneficiary designation and his alleged damages. *Id.* at 12.

In response to the motion, the plaintiff argues that the Participation and Trust Agreements "required Defendants to administer [Decedent]'s 'key man' insurance policy, and clearly required Defendants to advise Plaintiff of [Decedent]'s change in beneficiary and to prevent the same from happening." Mem. of Law in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") at 2, Doc. No. 26. The plaintiff also argues that "[a]nything less would make the 'key

man' insurance program, which was governed by these two agreements, futile and worthless," because "the very intent of the program was to protect a co-owner, such as Plaintiff." *Id.*

Despite the plaintiff's arguments to the contrary, the court finds that he has failed to assert a cognizable claim for breach of contract in this case. The elements of breach of contract action are "'(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (alteration in original)). Here, the plaintiff has not included sufficient factual allegations to support a cause of action for breach of contract because he has failed to allege the essential terms of the purported contract with the defendants or the breach of duties actually imposed by the contract.

The plaintiff brings his breach of contract claim under the theory that the defendants' failure to notify him that Decedent changed the beneficiary of the Policy "eviscerated the intent of the 'key man' insurance and breached both the Participation Agreement and the Trust Agreement." Pl.'s Resp. at 3. However, the plaintiff has still completely failed to identify any terms of the Policy, Participation Agreement, or the Trust Agreement, that either prevented Decedent from changing the beneficiary or required the defendants to notify him, as the beneficiary, if Decedent changed the beneficiary of the Policy. Both the Trust Agreement and Participation Agreement state that the rights of the beneficiaries of the trust are governed by the terms of the respective policies. For example, the Participation Agreement states, "The Employer Agrees and acknowledges that the sole interest of the Employer and its employees and their beneficiaries in the Trust shall be the benefits that may become payable under the terms of the Group Policy or Policies." Participation Agreement at 2, ¶ 6. The Trust Agreement provides

9

that the Trustee will disperse assets "in accordance with the provisions of this Trust Agreement and the terms of the Group Policy or Policies held hereunder." Trust Agreement at art. II, ¶ 2. Additionally, the Trust Agreement provides, "[t]he parties to this Trust Agreement shall be bound by the terms of the Group Policy or Policies unless the terms of such Group Policy or Policies conflict with the terms of this Trust Agreement, in which event the Trust Agreement shall prevail." *Id.* at art. IV, ¶ 1. The Trust Agreement further states as follows:

> Except as otherwise provided under applicable law or the Group Policy or Policies, the Trustee, the Participating Employers, and the Association shall have no duty or liability to any Participant or Beneficiary by reason of this Trust Agreement, other than to perform in good faith their respective duties hereunder and in the manner and in the limits herein provided.

*Id.* at art. IX, ¶ 1.

The plaintiff has still not sufficiently pleaded that he had any rights whatsoever, other than any rights that he would have had when he was a named beneficiary under the Policy.[3] Accordingly, as the plaintiff has failed to properly allege the essential terms of the contract that the defendants breached or the particular duties actually imposed by the contract, he has failed to include sufficient allegations that would entitle him to relief under a cause of action for breach of contract.

Although the plaintiff has failed to allege the essential terms of the written agreement, he appears to try to argue that the terms were established by the pattern and practice of the parties. More specifically, the plaintiff alleges that "the pattern and practice of the parties pursuant to the Participation Agreement and the Trust Agreement, as discussed above, was that Defendants would notify [the plaintiff] of a change in beneficiary to the [Policy]." Am. Compl. at ¶ 44. However, the only other allegation the plaintiff makes before this concerning a pattern or

---

[3] The plaintiff also does not allege that the Policy provided that the named beneficiary would receive notice if the insured changed the beneficiary designation.

practice or notification is that the plaintiff was notified at the time he became the named beneficiary.  *Id.* at ¶ 13.  Moreover, Exhibits A and B to the amended complaint indicate that NADIT sent a copy of the recorded Change of Beneficiary/Name form to the newly-named beneficiary when Northeast Lincoln and the plaintiff were each named, not to the entity being replaced as beneficiary.  *Id.* at Exs. A, B.  Therefore, the plaintiff has failed to sufficiently plead any type of pattern or practice that would have entitled him to notice each and every time there was a change in beneficiary.

The plaintiff also asserts that he was entitled to notification of a beneficiary change because he or Northeast Lincoln was also an owner of the Policy by virtue of their payment of the premiums for the Policy.  *Id.* at ¶ 15.  The court previously rejected this contention in the court's memorandum opinion dismissing the original complaint in this action because "the plaintiff cited to no case law or legal principle that would have placed him or Northeast Lincoln in the position as an owner of the Policy simply by him or Northeast Lincoln paying the premiums."  Mem. Op. at 10.  This time, the plaintiff has cited to a 1972 case from Oregon which held that "a policy of insurance on the life of the officer of a corporation for which the premiums are paid by the corporation" becomes an asset of the corporation.  *Gas-Ice Corp. v. Newbern*, 501 P.2d 1288, 1292 (Or. 1972).

In *Gas-Ice*, an officer of a corporation took out a life insurance policy naming the corporation as a beneficiary.  501 P.2d at 1290.  After the officer made the initial first premium payments, "[m]ost, if not all, of the remaining premiums on the policies . . . were paid by the corporation."  *Id.*  The corporation reported these premium payments as an asset purchase, the officer borrowed on the policies to provide funds for use by the corporation, and the funds were "assigned to the Small Business Administration as security for a loan by it to the corporation."

*Id.* The officer later "changed the beneficiary of these policies to his wife and took them with him when he later left the corporation," and the company brought suit to recover the cash value of the policies. *Id.* at 1289-90. The court held that the insurance policy was an asset of the corporation under the principle that "although the officer of a corporation may take title to property in his own individual name, if funds of the corporation are used to pay for such property it will ordinarily be considered to be an asset of the corporation, under the theory of an implied trust for its benefit." *Id.* at 1292-93.

"Ownership of a life insurance policy, such as involved here, does not necessarily entail ownership of the proceeds of that policy." *First Fid. Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993). By paying for the insurance policy, the corporation in *Gas-Ice* stepped into the shoes of the officer, and inherited whatever rights the officer had under the policy. As the Fifth Circuit, in addressing a factual scenario analogous to *Gas-Ice*, explained,

> The insurance having been acquired at the expense and for the benefit of the . . . company, that company was the owner of the policy and the beneficiary of its provisions, including the one as to changing the beneficiary. Whatever rights or privileges the insured had under the terms of the policy, he held in trust for the party from whom the consideration proceeded.

*Wellhouse v. United Paper Co.*, 29 F.2d 886, 887 (5th Cir. 1929). Following the plaintiff's argument to its logical conclusion, if the plaintiff was an owner of the Policy by virtue of making payments, this *may* have afforded him the right to control a change to the named beneficiary. It does not follow, however, that this gives the plaintiff standing to sue the trust and trustee for paying out the insurance proceeds to the then-named beneficiary under the Policy. Indeed, both *Gas-Ice* and *Wellhouse* were cases that involved suits of one claimant alleging that they had right to the proceeds of the policy, as against the other. In both cases, the policies were purchased with the intent to benefit the corporation and the premiums were paid with corporate assets.

Here, however, while the plaintiff alleges that the original policies were purchased "for the benefit of Northeast Lincoln, William Ketye . . . and Thomas F. Murphy," there is nothing to suggest, and the plaintiff has not alleged, that the defendants, as trust and trustee of the group insurance policies, would have known about such an agreement between the plaintiff and the Decedent. Am. Compl. at ¶ 7. Therefore,

> when the change of beneficiary had been made as provided in the policy, the insurance company would have the right to pay the proceeds of the policy to the beneficiary named in the notice directing the change. Whatever rights or equities may have arisen between the last-named beneficiary and the one originally named in the policy, it seems fundamental to say that the insurance company would not be obliged to pay the proceeds of the policy other than as provided therein, without notice of such rights or equities.

*Bennett v. Union Cent. Life Ins. Co.*, 263 N.W. 25, 29 (Iowa 1935). Moreover, "[w]here the right to change the beneficiary has been reserved in a life insurance policy, the beneficiary named has but a mere expectancy with no vested right or interest during the lifetime of the insured." *Knoche v. Mutual Life Ins. Co. of N.Y.*, 176 A. 230, 230-31 (Pa. 1934). Accordingly, the trust and trustee of the group insurance policies cannot be held liable for simply paying out the proceeds to the named beneficiary.

### 2. Motion to Dismiss Count II – Breach of Fiduciary Duty

The defendants contend that the gist of the action doctrine or the economic loss doctrine preclude the plaintiff's causes of action for breach of fiduciary duty in this case. Defs.' Mem. at 10-12. The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract and tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002) (citing *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992)).[4] In

---

[4] Although the Supreme Court of Pennsylvania has not adopted the gist of the action doctrine, both the Superior Court of Pennsylvania and the United States Court of Appeals for the Third Circuit have predicted that the Court would adopt it. *See Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 385 (3d Cir. 2004) ("Although the Pennsylvania Supreme Court has not expressly adopted th[e gist of the action] doctrine, we predict that the state supreme court

this regard, the "important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 663 A.2d 753, 757 (Pa. Super. 1995). Thus, "the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc.*, 811 A.2d at 14 (citation omitted); *see Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n.8 (3d Cir. 2002) (explaining that the gist of the action doctrine bars tort claims arising solely from a contract).

The defendants contend that the plaintiff cannot bring causes of action for breach of fiduciary duty because the claims are based upon alleged contractual obligations between the parties. Defs.' Mem. at 9-11. In response to the defendants' arguments, the plaintiff asserts that if the defendants wish to deny the existence of a contractual obligation to notify the plaintiff of the decedent's change in beneficiary, then the defendants cannot argue that the breach of fiduciary duty claim sounds in contract. Pl.'s Resp. at 11-12. The defendants reply that the plaintiff is required to prove that there is "an independent fiduciary relationship" between a Trust or Trustee and the beneficiary of an insurance policy. Reply Br. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. ("Defs.' Reply"), at 7-8, Doc. No. 27.

"[A] breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary relationship arises solely from a contract and not as a matter of social policy." *Strategic Learning, Inc. v. Wentz*, No. CIV.A.1:05-CV-0467, 2006 WL 3437531, at *6 (M.D. Pa. Nov. 29, 2006). An exception lies "only where the fiduciary relationship in question is well-established and clearly defined by Pennsylvania law or policy, such as (for example) the social policy which defines relationships among majority and minority shareholders." *Ginley v. E.B.*

---

would adopt the doctrine as set out in the Superior Court's cases."); *eToll, Inc.*, 811 A.2d at 14 (acknowledging that Superior Court of Pennsylvania, but not the Supreme Court of Pennsylvania, has adopted the gist of the action doctrine).

*Mahoney Builders, Inc.*, No. CIV.A. 04-1986, 2005 WL 27534, at *2 (E.D. Pa. Jan. 5, 2005) (citing *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104-05 (3d Cir. 2001)). The plaintiff has not pleaded in the amended complaint or cited to any authority in his response to the motion to dismiss that would suggest that there is an independent fiduciary relationship between the Trust or Trustee and the plaintiff as beneficiary of the Policy. "If such a relationship exists, it arises solely because of the contractual arrangement between the parties." *Strategic Learning*, 2006 WL 3437531, at *6. Accordingly, the court will dismiss the claim for breach of fiduciary duty.

### III. CONCLUSION

Despite being given a second opportunity to plead his claims, the plaintiff has been unable to include sufficient allegations to assert a valid breach of contract claim or breach of fiduciary duty claim.[5] It appears that any further effort would be futile.[6] Accordingly, the court will grant the motion to dismiss the amended complaint with prejudice.

An appropriate order follows.

BY THE COURT:

*/s/ Edward G. Smith*
EDWARD G. SMITH, J.

---

[5] The defendants also assert that the plaintiff failed to allege a causal connection between the defendants' failure to notify him of a change of beneficiary and his alleged damages. Defs.' Mem. at 12-13. The court need not address this issue because of the court's resolution of the other issues in the case.

[6] Additionally, in non-civil rights cases, if a plaintiff has not properly requested leave to amend, a district court may dismiss with prejudice. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007).